1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

THERESA BROOKE, a married woman dealing with her sole and separate claim,

Plaintiff,

v.

KALTHIA GROUP HOTELS, a California corporation dba Clarion Inn;

Defendant.

CASE NO. 15cv1873-GPC(KSC)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE**

[Dkt. No. 7.]

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Before the Court is Defendant's motion to dismiss. (Dkt. No. 7.) Plaintiff filed an opposition and Defendant filed a reply. (Dkt. Nos. 9, 10.) Plaintiff was granted leave and filed a sur-reply. (Dkt. No. 14.) With the Court's permission, Defendant filed the supplemental declaration of its General Manager, Neil Patel. (Dkt. No. 19.) The motions are submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Based on a careful review of the briefs, the documents in support, and the applicable law, the Court, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction and DISMISSES the Complaint with prejudice.

26

## Background

27
28

Plaintiff Theresa Brooke ("Plaintiff") filed a complaint alleging violations of Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq*.

and the regulations implementing the ADA, 28 C.F.R. §§ 46.101 *et seq*.; the California Unruh Civil Rights Act, California Civil Code sections 51, 52, and the California Disabled Persons Act ("DPA"), California Civil Code sections 54-54.3.

Plaintiff ambulates with the aid of a wheelchair due to loss of a leg.  (Dkt. No. 1, Compl. ¶ 1.)  Defendant Kalthia Group Hotels is a California corporation that owns and/or operates and does business as the Clarion Inn located at 1455 Ocotillo Drive, El Centro, CA 92243.  (Id. ¶ 2.)  Clarion Inn is a public accommodation which offers public lodging services.  (Id.)

Around August 23, 2015, Plaintiff contacted Defendant's hotel for purposes of booking a room.  (Id. ¶ 24.)  Plaintiff inquired whether Defendant's hotel pool or Jacuzzi had a pool lift or other means of access for disabled persons.  (Id.) Defendant's representative stated that the hotel Jacuzzi did not have a pool lift or other means of access.  (Id.)  The representative also admitted that the latch to the pool is too high for a person in a wheelchair to reach.  (Id.)  Plaintiff's agent, as part of a due diligence investigation, independently verified that the Jacuzzi did not have a pool lift and the entry gate latch to the pool area was too high to access for a person in a wheelchair such as Plaintiff.  (Id.)  Plaintiff has personal knowledge of at least one barrier related to her disability, that is, the Jacuzzi is inaccessible to her by virtue of her confinement to a wheel chair, and she is currently deterred from visiting Defendant's accommodation by this accessibility barrier.  (Id. ¶ 25.)  Therefore, she has suffered an injury-in-fact for the purpose of her standing to bring this action.  (Id.)  Without the presence of a fixed pool lift or other means of permitting Plaintiff equal access to the Jacuzzi, Plaintiffs disability prevents her from equal enjoyment of the Jacuzzi.  (Id. ¶ 27.)

Plaintiff intends to travel to the location of the Defendant's place of public accommodation in the future for business, pleasure or medical treatment.  (Id. ¶ 28.) As a result of Defendant's non-compliance with the ADA, Plaintiff will avoid and not stay at Defendant's place of accommodation in the future.  (Id. ¶ 29.)  The existence

of barriers to use the Jacuzzi at Defendant's hotel deterred Plaintiff from staying or returning to seek accommodations at Defendant's hotel. (Id. ¶ 30.) As a result of Defendant's non-compliance with the ADA, Plaintiff, unlike persons without disabilities, cannot independently use Defendant's pool. (Id. ¶ 31.) In violation of Section 242.2[1] of the 2010 ADA Standards for Accessible Designs ("2010 ADAAG") Defendant's pool does not have at least one accessible means of entry in complying with Sections 1009.2 or 1009.3. (Id. ¶ 32.)

Plaintiff wishes to travel to the location of Defendant's place of public accommodation for personal, business and/or medical treatment and wants to stay in hotels there. (Id. ¶ 33.) But for the presence of architectural barriers at Defendant's hotel, Plaintiff would consider staying at Defendant's hotel. (Id.) Upon information and belief, though Defendant has centralized policies regarding the management and operating of its hotel, Defendant does not have a plan or policy that is reasonably calculated to make its entire hotel fully accessible to and independently usable by, disabled people. (Id. ¶ 34.) Plaintiff, or an agent of Plaintiff, intends to return to Defendant's hotel to ascertain whether it remains in violation of the ADA. (Id. ¶ 37.) Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. (Id. ¶ 38.) These injuries include being deterred from using Defendant's facilities due to the inaccessibility of Defendant's pool and the denial of the opportunity to use said pool. (Id.) Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel pool in violation of her rights under the ADA. (Id. ¶ 39.)

On September 24, 2015, Defendant filed a motion to dismiss. (Dkt. No. 7.) On September 25, 2015, Plaintiff filed an opposition, and Defendant filed a reply on

---

[1]Section 242.2 of the 2010 ADA Standards for Accessible Designs provides "242.2 Swimming Pools. At least two accessible means of entry shall be provided for swimming pools. Accessible means of entry shall be swimming pool lifts complying with 1009.2; sloped entries complying with 1009.3 . . . 242.4 Spas. At least one accessible means of entry shall be provided for spas. Accessible means of entry shall comply with swimming pool lifts complying with 1009.2. 2010 ADAAG §§ 242.2, 242.4.

October 30, 2015. (Dkt. Nos. 9, 10.) With the Court's permission, Plaintiff filed a sur-reply on November 6, 2015 to address the newly raised issue of mootness. (Dkt. No. 14.) On November 9, 2015, Defendant then filed an ex parte motion for leave to file a supplemental declaration of N. Patel and to strike Exhibit 1 to Plaintiff's sur-reply. (Dkt. No. 15.) Plaintiff filed an opposition to Defendant's ex parte, and Defendant filed a reply.[2] (Dkt. No. 16, 17.) On November 16, 2016, the Court granted Defendant's ex parte application. (Dkt. No. 18.) With the Court's permission, Defendant filed the supplemental declaration of its General Manager, Neil Patel, on the same date. (Dkt. No. 19.)

**A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction by requiring . . . that plaintiffs have standing and that claims be 'ripe' for adjudication." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121 (9th Cir. 2010). Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the defendant asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. Id. The factual allegations in the

---

[2]The Court notes that in these additional filings, it is obvious that the attorneys do not get along; however, it is not appropriate for the parties to be providing emails or declarations to the Court about the inappropriate conduct, allegations, and language used by the attorneys. Many of the documents filed by the parties are not relevant to the issue in the pending motion to dismiss and deter the Court away from the relevant issues.

complaint are assumed to be true.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction.  Safe Air for Everyone, 373 F.3d at 1039.  Under a factual attack, the allegations in the complaint are not presumed to be true, White, 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage, 343 F.3d at 1039 n. 2.  The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  See id.  However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).)

In its reply, Defendant summarily asserts that it is making a facial and factual attack under Rule 12(b) but does specify how.  It appears, in the motion to dismiss, that Defendant raises a facial attack based on the allegations in the complaint arguing that Plaintiff has failed to demonstrate an injury-in-fact sufficient to show Article III standing.  In its reply, it appears that Defendant also raises a factual attack alleging that Plaintiff's cause of action under the ADA is moot since it installed an ADA compliant

1   pool lift around September 30, 2015.[3]   (See Dkt. No. 10-2 Patel Decl. ¶ 2.)

2   **B.   ADA**

3       Plaintiff brings a cause of action under the ADA. The ADA prohibits

4   discrimination that interferes with disabled individuals' "full and equal enjoyment" of

5   places of public accommodation. 42 U.S.C. § 12182(a). Unlawful discrimination

6   under the ADA occurs when an accommodation "subjects an individual . . . to a denial

7   of the opportunity . . . to participate in or benefit from the . . . accommodations of an

8   entity." 42 U.S.C. § 12182(b)(1)(A)(i). The 1991 ADA Accessibility Guidelines

9   ("ADAAG") provide "the objective contours of the standard that architectural features

10  must not impede disabled individuals' full and equal enjoyment of accommodations."

11  Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011). Individuals

12  may only seek injunctive relief under Title III of the ADA. Pickern v. Holiday Quality

13  Foods Inc., 293 F.3d 1133, 1136 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)).

14  **C.   Facial Attack on Subject Matter Jurisdiction - Article III Standing**

15      Article III, section 2 of the United States Constitution requires that a plaintiff

16  have standing to bring a claim. See U.S. Const. art. III, § 2. In order "to satisfy Article

17  III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact'

18  that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

19  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;

20  and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

21  by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),

22  Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,

23  560-61 (1992)). The party seeking federal jurisdiction has the burden of establishing

24  its existence. Lujan, 504 U.S. at 561. "For purposes of ruling on a motion to dismiss

25

26      [3]In her sur-reply, Plaintiff argues that the Court should not consider the newly raised issue of mootness raised for the first time in Defendant's reply. However, since

27  Plaintiff was given a chance to address the new issue in a sur-reply and additionally challenges the facts presented by Defendant, the Court concludes that it may consider the evidence submitted by both parties on the mootness issue. See Provenz v. Miller,

28  102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). The Supreme Court has instructed courts to take a "broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

In addition, to the standing requirements, a plaintiff seeking injunctive relief must demonstrate "a sufficient likelihood that he will be wronged again in a similar way." Fortyune v. Am. Multi–Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting City of Los Angeles. v. Lyons, 461 U.S. 95, 111 (1983)). In other words, a plaintiff must show he faces a "real and immediate threat of repeated injury." Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). While "past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy," Lyons, 461 U.S. at 103, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." O'Shea, 414 U.S. at 496.

Defendant disputes the "injury-in-fact" requirement for standing. Defendant argues that Plaintiff lacks standing because she has failed to allege a single visit to the Clarion Inn, has only made conclusory allegations of a desire to visit the Clarion Inn if it were made accessible, and has failed to allege a significant possibility of future harm. In response, Plaintiff asserts that an ADA plaintiff can demonstrate standing to sue for injunctive relief by solely demonstrating deterrence. She alleges that she was deterred from lodging at Defendant's hotel because of her knowledge that the hotel Jacuzzi was not accessible due to a lack of a pool lift and the gate latch for entry to the hotel pool area was too high. Plaintiff argues that the "call and confirm" method of standing has been sufficient to confer standing as ruled in three cases involving

Plaintiff in the District of Arizona.  (See Dkt. Nos. 9-1; 9-2; 9-3.)[4]

An "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  See Lujan, 504 U.S. at 560-61.  "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." Id. at 560 n. 1.  The Court first addresses whether Plaintiff's "call and confirm" method confers standing under Article III.

The deterrent effect doctrine may confer standing in the ADA context.  Pickern, 293 F.3d at 1135.  The Ninth Circuit held that "stating that [the plaintiff] is currently deterred from attempting to gain access to the Paradise store, Doran has stated sufficient facts to show concrete, particularized injury." Id. at 1137-38.  In addition, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'" Id. at 1138.  Under the deterrent effect doctrine, the court recognized that the plaintiff had "actual knowledge" of the alleged violation. Id. (plaintiff visited the store in the past stating he has actual knowledge of the barriers).

In Pickern, the plaintiff was a regular customer of the Holiday Foods grocery stores located in his hometown and attested that it was his favorite grocery store chain. Id. at 1135.  The plaintiff visited and encountered barriers at a store about 70 miles from his hometown, in Paradise, CA, where his grandmother lives and where he frequently visits.  Id.  He visited the Paradise store in question where he encountered barriers but this visit was outside the statute of limitations period and could not be a basis for a cause of action.  Id. at 1136.  Then, during the statute of limitations period,

---

[4]The three cases are: Brooke v. Airport Hotel, LLC, No. 15cv1149-HRH, 2015 WL 5444286, at *2 (D. Az. Sept. 16, 2015); Brooke v. Apache Hospitality, LLC, No. 15cv1296-HRH, 2015 WL 5285926, at *1-2 (D. Az. Sept. 10, 2015); Brooke v. Joie de Vivre Hospitality LLC, No. 15cv281-PHX-GMS, Dkt. No. 11 at *3-4 (D. Az May 20, 2015).

1   the plaintiff visited the store again with a friend and was "obliged, because of the
2   barriers to wait in the parking lot while his companion went into the store on his
3   behalf." Id. at 1136.  These facts were the basis for the Ninth Circuit to apply the
4   deterrent effect doctrine to an ADA standing case. See Chapman, 631 F.3d at 949
5   ("We first recognized that the "deterrent effect doctrine" may confer standing in
6   Pickern.") In Pickern, the court noted that the plaintiff "personally encountered certain
7   certain barriers that bar his access to Holiday's Paradise store." Id. at 1138.  The
8   plaintiff alleged that he had actual knowledge of the barriers to access and that he
9   preferred to shop at Holiday markets and that he would shop there if it were accessible.
10  Id.  Based on these facts, the Court found that the plaintiff established an actual or
11  imminent injury.  Id.

12      In Doran, the Ninth Circuit concluded that Doran suffered a concrete and
13  particularized injury because he alleged that he "personally suffered discrimination as
14  to a result of the barriers in place during his visits to 7-Eleven and that those barriers
15  have deterred him on at least four occasions from patronizing the store." Doran v. 7-
16  Eleven, Inc., 524 F.3d 1034, 1040 (9th Cir. 2008).  The court also concluded that
17  Doran's injury was actual or imminent because he alleged he had visited the store on
18  ten or twenty prior occasions, that he is currently deterred from visiting the store due
19  to its accessibility barriers, that the store is located near his favorite fast food
20  restaurant, and he plans to visit Anaheim at least once a year on his annual trips to
21  Disneyland. Id. at 1040.  The court explained the continued deterrence and his intent
22  to return in the future once the barriers have been removed were sufficient to establish
23  that his injury was actual or imminent.  Id.  In both Pickern and Doran, the plaintiff[5]
24  had actual knowledge of the barriers because he, himself, visited and encountered those
25  barriers.

26      The ADA does not require an ADA plaintiff to engage in a futile gesture if the
27  person has *actual notice* that the defendant does not intend to comply with its
28  

[5]The plaintiff was the same in Pickern and Doran.

[15cv1873-GPC(KSC)]

provisions.  <u>See</u> 42 U.S.C. § 12188(a)(1) ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions") (emphasis added); 28 C.F.R. § 36.501(a) (same).  The Ninth Circuit, relying on the "futile gesture" provision, held that "under the ADA, once a plaintiff has *actually become aware* of discriminatory conditions existing at a public accommodation, and is thereby deterred  from visiting or patronizing that accommodation, the plaintiff has suffered an injury.  <u>Pickern</u>, 293 F.3d at 1136-37 (emphasis added).

Plaintiff argues that the "call and confirm" method along with a site visit by Plaintiff's agent are sufficient for standing, and that <u>Pickern</u> does not require a plaintiff to engage in the "futile gesture" of booking a room at the Clarion Inn when she has knowledge of the barriers and is therefore deterred. [6]  However, <u>Doran</u> and <u>Pickern</u> do not hold or suggest that a "call and confirm" method, without ever having visited the site, along with a site visit by "Plaintiff's agent" is sufficient to demonstrate "actual knowledge" or "actual notice" of the alleged barriers.  The parties do not address what constitutes "actual knowledge" or "actual notice" by an ADA plaintiff.

Plaintiff relies primarily on the District of Arizona cases where the court concluded she has standing based on the allegations that she had not stayed at Defendant's hotel, she called  the hotel and was informed that the defendant's pool did not have a pool lift, and she "independently verified the absence of a pool lift at the hotel."  <u>See</u> <u>Brooke v. Airport Hotel, LLC</u>, No. 15cv1149-HRH, 2015 WL 5444286 (D. Az. Sept. 16, 2015); <u>Brooke v. Apache Hospitality, LLC</u>, No. 15cv1296-HRH, 2015 WL 5285926 (D. Az. Sept. 10, 2015); <u>Brooke v. Joie de Vivre Hospitality LLC</u>, No. 15cv281-PHX-GMS, Dkt. No. 6, Am Compl. ¶ 22 (D. Az May 20, 2015).  However, the facts in the Arizona cases are not similar to this case.  In the Arizona

---

[6]While Plaintiff asserts that the "call and confirm" method has been determined to confer standing in the Ninth Circuit, she cites to no caselaw.  (Dkt. No. 9, P's Opp. at 6.)

cases, Plaintiff alleged that she "independently verified" the absence of a pool lift.  In this case, the lack of a pool lift and lack of an ADA complaint metal latch to the pool area was "independently verified" by "Plaintiff's agent."  (Dkt. No. 1, Compl. ¶ 24.) There is no indication she has any "actual knowledge" or "actual notice" of the alleged violations.

A review of cases concerning what constitutes "actual knowledge" or "actual notice" reveals that an allegation that Plaintiff's agent verified the violations is not sufficient to confer standing.

The court in Pickern cited Steger v. Franco, Inc., 228 F.3d 889, 892-94 (8th Cir. 2000) in support of its ruling.  The Steger court held "[a]lthough plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, see 42 U.S.C. § 12188(a)(1), they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."  Steger, 228 F.3d at 892 (citations omitted).  Based on this holding, the Eighth Circuit held that three disabled plaintiffs lacked standing to seek injunctive relief where they did not visit the public accommodation at issue, did not know whether it was accessible, and presented no evidence regarding the likelihood of their future visits.  Id. at 891-93.  However, as to the fourth disabled plaintiff, because he entered the building to access the men's restroom but was unable to do so because of the lack of an ADA compliant restroom signage, he had standing to sue.  Id.

In Resnick v. Magical Cruise Co., Ltd., 148 F. Supp. 2d 1298, 1301-02 (M.D. Fla. 2001), the plaintiff brought suit against operators of cruiseships claiming they failed to comply with the ADA.  The plaintiff had not boarded or attempted to board the cruiseship and was not subject to discrimination.  Instead, the plaintiff allege they had "reasonable grounds" to believe that they are about to suffer discrimination based on knowledge they acquired from their review of the cruiseship's website and its information regarding the amenities of the ships.  Id. at 1301.  The court concluded that plaintiff's review of the website was insufficient to confer standing.  Id. at 1301.  The

alleged "reasonable belief" based only on review of the website that Resnick would encounter discrimination if he attempted at some unspecified time in the future to cruise on one of Magical's ships does not constitute "concrete and particularized" injury. Id. at 1302.  The court further addressed Plaintiff's reliance on the "futile gesture" exception.  Id. at 1302.  The court, relying on other cases, concluded that "actual notice" under 42 U.S.C. § 12188(a)(1), requires either having "encountered discrimination or [having] learned of the alleged violations through expert findings or personal observation."  Id. (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1081 (D. Haw. 2000) and citing Steger, 228 F.3d at 892 ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers.") (citation omitted)).  The Maryland district court concluded that the plaintiff did not have "actual notice" that Defendant did not intend to comply with the statute. Id. at 1302.

In another recent case, Nat'l Fed'n of the Blind of California v.  Uber Techs., Inc., Case No. 14–cv–04086 NC, –F. Supp. 3d –, 2015 WL 1800840 (N.D. Cal. April 17, 2015), on a motion to dismiss, the Northern District of California held that individual members established injury in fact to support standing against taxi services provider alleging discrimination against blind persons by refusing to transport guide dogs. Id. at 5.  Even though one member had never used the provider's services, he alleged he had personal knowledge of other blind persons with service animals who had been denied services and that this knowledge deterred him from using the provider's services on specific dates due to his belief of likely continued discrimination. Id.  Specifically, he alleged that during the annual state convention in El Segundo, California on October 9–12, 2014, he met "attendees with service animals who were experiencing denials when attempting to use UberX to travel to and from the convention hotel." Id.  In addition, he listed a number of specific dates and instances

when he was deterred from using UberX. Id.  Lastly, he alleged that he would like to use UberX on March 9, 2015, a future date, during a business trip in Sacramento, but is deterred based on his belief of continued discrimination. Id.  The court held that these allegations were sufficient to allege standing. Id.  The one member who had never used Uber could rely on reports by other disabled persons based on their experiences.

These cases reveal that in order for the futile gesture argument to be applicable, the plaintiff must have "actual knowledge" or "actual notice" of an alleged violation of the ADA before invoking the deterrent effect doctrine.  There must be some reliable basis to make assertions of alleged violations such as personal encounters, assertions from an expert, or from other disabled individuals.  An allegation that Plaintiff's agent "independently verified" the alleged violations, without more information about the agent, is not sufficient to allege standing. Accordingly, the Court GRANTS Defendant's motion to dismiss for failing to sufficiently allege an "injury-in-fact"[7] for purposes of Article III standing, and the Court lacks subject matter jurisdiction.  While the deficiencies in the complaint may be remedied by granting leave to file an amended complaint, based on the Court's finding below that the ADA cause of action is now moot, the Court's lack of subject matter jurisdiction cannot be cured.

**D.    Factual Attack on Subject Matter Jurisdiction - Mootness**

Defendant raises a factual attack on subject matter jurisdiction arguing that the case is mooted by the fact that it installed an ADA complaint pool lift on September 30, 2015.  On a factual attack, the Court may consider evidence outside the complaint and the allegations in the complaint are not presumed to be true. See White, 227 F.3d at 1242.

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" Susan B. Anthony List v. Driehaus, 134

---

[7]Since the Court concludes that it lacks subject matter jurisdiction based on Plaintiff's failure to sufficiently allege "injury-in-fact", it need not address the additional issue of whether Plaintiff has sufficiently alleged an intent to return.

S. Ct. 2334, 2341 (2014).  A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "Because . . . mootness . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [mootness is] properly raised in a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1). . . ." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

The ADA requires that new facilities be "readily accessible to and usable by individuals with disabilities," unless this would be "structurally impracticable." 42 U.S.C. § 12183(a)(1).  In general, a facility is "readily accessible to and usable by individuals with disabilities" if it meets the requirements promulgated by the Attorney General in the "ADA Accessibility Guidelines" or the "ADAAG," which is essentially an encyclopedia of design standards. Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011). A "defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." Id.

The voluntary cessation doctrine is an exception to the general rule that a case is mooted by the end of the offending behavior.  Under the voluntary cessation doctrine, Defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). This is because "otherwise they would simply be free to 'return to (their) old ways' after the threat of a lawsuit had passed." Armster v. U.S. Dist. Court for Cent. Dist. of California, 806 F.2d 1347, 1359 (9th Cir.1986) (quoting Iron Arrow Honor Society v. Heckler, 464 U.S. 67 (1983)).

Courts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future. See Hickman v. State of Mo., 144 F.3d 1141, 1144 (8th Cir. 1998) (voluntary cessation doctrine made claims moot due to structural changes such as installation of ramps, pull and grab bars, and chair lifts); Houston v. 7–Eleven, Inc.,

No. 13-60004-CIV, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014) ("Since 7–Eleven has made structural modifications to remove or remediate all ADA violations at the 7090 Store, this Court is convinced that the allegedly wrongful behavior could not reasonably be expected to recur."); Nat'l Alliance for Accessability, Inc. v. Walgreen Co., No. 10–Civ–780–J–32–TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov.28, 2011) (collecting cases); but see Moore v. Dollar Tree Stores Inc., 85 F. Supp. 3d 1176, 1187 (E.D. Cal. 2015) (adjusting operation pressure of the exterior doors was not akin to a structural modification and Defendant did not submit any evidence these modifications were permanent).  The fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct.  Kallen v. J.R. Eight, Inc., 775 F. Supp. 2d 1374, 1379 (S.D.  Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.").

In this case, the complaint alleges that the "Jacuzzi did not have a pool lift and the entry gate latch to the pool area was too high to access for a person in a wheelchair such as Plaintiff."  (Dkt. No. 1, Compl. ¶ 24.)  Defendant alleges that a new ADA compliant pool lift for mobility-impaired persons was installed around September 30, 2015. (Dkt. No. 10-2, Patel Decl. ¶ 2; Ex. 1.)  As to the latch of the metal gate securing the outdoor pool area and spa,  Defendant states the height was never in violation of the ADA and measures around 46 inches above the floor as required by the ADAAG. (Id. ¶ 3; Dkt. No. 10-10, D's RJN, Ex. 3.)  According to Defendant, the gate latch was installed prior to March 15, 2012 and has not been subsequently altered or modified. (Id.)

In response, Plaintiff filed a sur-reply raising factual issues and questions as to the installation of the new lift.  Then, Defendant filed a supplemental declaration of its General Manager, Neil Patel, to address the factual issues raised by Plaintiff.  In the declaration, Neil Patel states that a new ADA compliant pool lift was purchased for a total of $3,130.93 and installed around September 30, 2015. (Dkt. No. 19, Patel Suppl.

Decl. ¶ 2.)  He also states that the pool lift is fixed to the ground.  (Id.)  He further explains that the "pool lift is anchored into the ground with cement via its anchor sleeve at the bottom of the device."  (Id. ¶ 5; see also Dkt. No. 19-4, Patel Suppl. Decl., Ex. 3, Owner's Manual.)  In its opposition to Defendant's ex parte application, Plaintiff does not dispute whether the pool lift and gate latch are now ADA compliant.  Instead, she argues that under the voluntary cessation doctrine, it is not clear that the allegedly wrongful behavior could not reasonably be expected to recur since Defendant can easily remove the two or three bolts used to secure the pool lift.

Contrary to Plaintiff's allegation, the facts demonstrate that the pool lift was secured with cement making it akin to a structural modification since it was installed with cement in addition to bolts.  Defendant addressed the ADA violation by installing a complaint pool lift shortly after the filing of the complaint.  See Access 4 All, Inc. v. Bamco Vi, Inc., No. 11-61007-CIV, 2012 WL 33163, at *5 (S.D. Fla. Jan. 6, 2012) ("even if the repairs were motivated by the pending lawsuit, the record reflects that Defendant acted promptly with a genuine desire to comply with the law").  Defendant spent money to install the pool lift.  See Houston v. 7-Eleven, Inc., No. 13-60004-CIV, 2014 WL 351970, at *3 (S.D. Fla. Jan. 31, 2014) ("There is zero chance of 7–Eleven spending money to undo the structural modifications it just paid $30,000 to implement.").  All the barriers identified by Plaintiff have been remediated.  These facts demonstrate that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  See Friends of the Earth, Inc., 528 U.S. at 190. Accordingly, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction based on mootness.

**E.     Supplemental Jurisdiction**

In the event the Court grants the motion to dismiss, Defendant also ask the Court to decline to exercise supplemental jurisdiction over the remaining two state law claims.  "[D]istrict courts may decline to exercise supplemental jurisdiction over a [ ] claim if . . . the district court has dismissed all claims over which it has original

jurisdiction." 28 U.S.C. § 1367(c)(3).  However, district courts only have discretion "[i]f the district court dismissed all federal claims on the merits."  <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 806 (9th Cir. 2001).  However, if the district court "dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."  <u>Id.</u>

Since the Court has dismissed Plaintiff's ADA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court has no discretion to exercise supplemental jurisdiction over the state law claims.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims  and dismisses them.

## Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss for lack of subject matter jurisdiction, and DISMISSES the Complaint with prejudice. The Clerk of Court shall close the case.  The Court **vacates** the hearing set for November 20, 2015.

IT IS SO ORDERED.


DATED:  November 18, 2015

HON. GONZALO P. CURIEL
United States District Judge

[15cv1873-GPC(KSC)]